IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | |
| MARK A. CULP and PATRICIA J. CHAMBERLAIN, | : | Bankr. Case No. 14-11592-BLS |
| | : | |
| Debtors. | : | Chapter 7 |
| | : | |
| MARK A. CULP and PATRICIA J. CHAMBERLAIN, | : | |
| | : | |
| Appellants, | : | Civ. No. 15-914-LPS |
| | : | Civ. No. 15-916-LPS |
| v. | : | Civ. No. 15-917-LPS |
| | : | |
| CHARLES A. STANZIALE, JR., Chapter 7 Trustee, | : | |
| | : | |
| Appellee. | : | |

## MEMORANDUM ORDER

At Wilmington on this 17th day of November, 2015:

This matter coming before the Court upon Appellants' Motion to Stay Pending Appeal,

filed in each of the above-captioned cases (15-914 (LPS), D.I. 5; 15-916 (LPS), D.I. 5; 15-917

(LPS), D.I. 5) (the "Motion to Stay"); and having considered the parties' papers submitted in

connection therewith; and for the reasons stated below,

**IT IS HEREBY ORDERED** that:

The Motion to Stay (15-914 (LPS), D.I. 5; 15-916 (LPS), D.I. 5; 15-917 (LPS), D.I. 5) is

**DENIED**.[1]

---

[1] Given the Court's decision to deny the requested stay, it is not necessary for the Court to
determine whether Appellants should be permitted to post a bond. (*See* 15-914 (LPS), D.I. 5 at
7; 15-914 (LPS), D.I. 7 at 18-19)

I.    Relevant Background[2]

These appeals arise from a Chapter 7 trustee's proposed sale of real property that has

suffered significant fire damage, has been vacant for nearly five years, and is encumbered by

liens in excess of $350,000. Appellants owned certain mixed-use real property known as 30680

Cedar Neck Road in Ocean View, Delaware (the "Property"), which they previously operated as

a bed and breakfast establishment. On or about August 8, 2005, Appellants executed a

promissory note in the amount of $309,000. To secure their obligations under the promissory

note, Appellants executed a mortgage encumbering the Property. On November 8, 2010, the

Property sustained significant fire damage. Thereafter, Appellants were the beneficiaries of

certain insurance proceeds for their fire-related loss as well as other insured losses. On February

26, 2013, the promissory note and mortgage were assigned to Green Tree Servicing, LLC

("Green Tree").

On June 27, 2014 ("Petition Date"), Appellants filed a voluntary petition for relief under

Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of

Delaware (the "Bankruptcy Court") (C.A. No. 14-11592 D.I. (hereinafter "B.D.I.") 90-1), and

Charles A. Stanziale, Jr. was appointed as Chapter 7 Trustee (the "Trustee") in the case.

Appellants did not claim an exemption in the Property or in the insurance proceeds. (*See* B.D.I.

1, 7, 46 (listing value of claimed exemption as $0.00)) As of the Petition Date, Green Tree

asserted a secured claim against the Property for approximately $280,000 and was holding

approximately $74,000 in cash in an escrow account. (B.D.I. 90-1 at ¶ 6) Accord Restoration,

Inc. ("Accord") asserted a mechanic's lien against the Property in the amount of $39,630.71, plus

_____

[2] The Court presumes the parties' familiarity with the background of this case. Salient facts,
however, have been set forth for ease of reference.

2

unpaid interest, which was related to certain construction activities undertaken by Accord for which it did not receive payment. (*Id.*) Accord filed a proof of claim in the Chapter 7 case in the amount of $131,210.33, asserting that $74,409.75 of its claim was secured. (*Id.*)

This dispute arises from the parties' disagreement regarding the value of the fire-damaged Property. At their Section 341 examination, Appellant Mark Culp testified that the fire damage to the Property was significant,[3] and Appellants have estimated the fair market value of the Property at $100,000. (*See* B.D.I 90-1 at ¶¶ 7, 13-14; *see also* B.D.I. 1, 7, 46) Appellants' estimate was based on "a general price that you would find on Trulia or Zillow" minus the cost of repair and restoration (established by a contractor's quote for approximately $308,000). (*See* B.D.I. 90-1, Ex. B at 7, 22-23) The estimated cost of the repair was also listed on the Appellants' Schedules at $308,078. (B.D.I. 90-1, Ex. A (Amended Schedule G)) Based upon his initial review, the Trustee valued the Property at approximately $143,423. (B.D.I. 90-1 at ¶ 16) The Trustee subsequently engaged in negotiations with Accord for sale of the Property. (*Id.* at ¶ 18) Accord made an initial offer of $260,000, which the Trustee rejected. (*Id.*) Negotiations between the parties continued for several months, until the Trustee ultimately negotiated an asset purchase agreement to sell the Property "as is" to Accord for $290,000. (*Id.*)

A. The Sale Motion

On July 2, 2015, the Trustee filed a motion with the Bankruptcy Court (the "Sale Motion") seeking approval of the Trustee's sale and marketing efforts, bid deadlines, and a form of asset purchase agreement pursuant to which Accord would purchase the Property. (*See* B.D.I. 47) On July 28, 2015, the Bankruptcy Court approved the bidding and sale procedures. (B.D.I.

---

[3] "The upstairs, significant fire damage, penetrations through the roof, walls; significant smoke, water damage, to the first floor, and resulting damage: wiring, plumbing, A/C ductwork, and the crawlspace underneath the house." (B.D.I. 90-1, Ex. B at 22)

61) Thereafter, the Trustee retained an appraiser, which estimated the value of the Property to be $175,000 (the "Buckley Appraisal"). (B.D.I. 90-1 at ¶¶ 22-24, Ex. G) The Trustee also approached several real estate brokers regarding the marketing of the Property, each of which declined due to the condition of the Property and liens encumbering it. (*Id.* at ¶ 25) The Property was advertised for sale online and in two local news publications. (*Id.* at ¶ 26, Ex. H & I) No bids were received by the deadline. (*Id.* at ¶ 27)

The Bankruptcy Court scheduled a final hearing on the Sale Motion for September 23, 2015. Appellants objected to the proposed sale on the bases that the Trustee had failed to establish the fair market value of the Property and that Appellants had filed a motion to convert their Chapter 7 case to Chapter 13 (discussed below). (*See* B.D.I. 83) In support of the Sale Motion, the Trustee filed a reply and declaration, which incorporated the Buckley Appraisal by reference. (*See* B.D.I. 90-1 at ¶ 24; Ex. G) The Trustee asserted that the proposed sale, at a price that significantly exceeded the value of the Property as estimated by Appellants and by the Trustee's appraiser, would result in the payoff of the secured lender in full, the satisfaction of all professional fees, full distribution on claims to all known allowed unsecured creditors, and a considerable distribution to the Appellants – and, therefore, the proposed sale was a sound exercise of the Trustee's business judgment. (*See* B.D.I. 90 at ¶¶ 1, 32-35)

B. *The Conversion Motion*

On August 27, 2015, Appellants filed a motion to convert their Chapter 7 case to a case under Chapter 13 (the "Conversion Motion"). (B.D.I. 80)[4] The Conversion Motion was four

---

[4] The Bankruptcy Code provides diverse courses debtors may pursue to gain discharge of their financial obligations and thereby obtain a "fresh start." *Marrama v. Citizens Bank of Mass.*, 127 S.Ct. 1105, 1107 (1991) (internal citations and quotation marks omitted). Chapter 7 and Chapter 13 proceedings are the "two roads individual debtors may take." *Harris v. Viegelahn*, 135 S.Ct.

sentences in length.  (*See id.*)  Appellants did not attach any documents, or any proof of income, or cite to case law in support of the relief sought.  (*See id.*)  The Trustee and Accord opposed the Conversion Motion asserting, *inter alia*, that Appellants were ineligible to be debtors under Chapter 13, pursuant to Sections 109 and 706 of the Bankruptcy Code.  (*See* B.D.I. 82, 84)

C.  The Fee Application

On September 3, 2015, the law firm of McCarter & English ("McCarter"), as counsel to the Trustee, filed its first interim fee application, covering the period of June 27, 2014 through August 31, 2015 (the "Fee Application").  (B.D.I. 81)  The Fee Application set forth a description of legal services McCarter had rendered to the Trustee in connection with the Chapter 7 case.  (*See id.* at ¶¶ 8-26)  Appellants filed an objection to the Fee Application, alleging generally that the case had "languished," that significant legal fees could not have accrued during the period covered by the Fee Application, and that legal fees associated with the proposed sale of the Property and Sale Motion should not be approved because the Sale Motion had conferred no benefit on the estate.  (*See* B.D.I. 86 at ¶¶ 1, 4, 5-7)

D.  The Bankruptcy Court Rulings

On September 23, 2015, the Bankruptcy Court held a hearing to consider the Conversion Motion, the Sale Motion, and the Fee Application.  At that hearing, the Bankruptcy Court heard

---

1829, 1835 (2015).  "Chapter 7 allows a debtor to make a clean break from his financial past, but at a steep price: prompt liquidation of the debtor's assets.  When a debtor files a Chapter 7 petition, his assets, with specified exemptions, are immediately transferred to a bankruptcy estate."  *Id.* at 1835; *see also* 11 U.S.C. § 541(a)(1).  "Chapter 13 works differently. . . .  Chapter 13 allows a debtor to retain his property if he proposes, and gains court confirmation of, a plan to repay his debts over a three- to five-year period."  *Id.*; *see also* §§ 1306(b), 1322, 1327(b).  "Payments under a Chapter 13 plan are usually made from a debtor's 'future earnings or other future income.'"  *Harris*, 135 S.Ct. at 1835; *see also* 11 U.S.C. § 1322(a)(1).  "Accordingly, the Chapter 13 estate from which creditors may be paid includes both the debtor's property at the time of his bankruptcy petition, and any wages and property acquired after filing."  *Harris*, 135 S.Ct. at 1835; *see also* § 1306(a).

oral argument, admitted the Trustee's declaration into evidence (D.I. 7-3, 9/23/15 Hrg. Tr. at 5),

and twice invited Appellants to cross-examine the Trustee (*id.* at 15, 30). The transcript reflects

that Appellants elected not to cross-examine the Trustee or to call any witnesses of their own.

(*See id.*) Following oral argument, the Bankruptcy Court clearly indicated its inclination to deny

the Conversion Motion and to approve the Sale Motion and Fee Application. (*See id.* at 45-48)

The Bankruptcy Court then encouraged the parties to discuss, at a recess, whether a settlement

might be reached that would avoid the need for the entry of the orders. (*See id.*) Following the

recess, the parties believed that they had reached a framework for an agreement, and the

Bankruptcy Court instructed the parties to file their agreement in the form of a stipulation no

later than September 30, 2015. (*See id.* at 53) The Bankruptcy Court deferred ruling on the Sale

Motion, Fee Application, and Conversion Motion until October 8, 2015. (*Id.*)

At a hearing held on October 8, 2015, the parties reported to the Bankruptcy Court that

while the Trustee, Accord, and Green Tree had reached an agreement as to the form of a

stipulation, an agreement could not be reached with Appellants. (D.I. 7-3, 10/8/15 Hrg. Tr. at 8)

After informing Appellants of the risks of their legal strategy -- including certain loss of the

Property if the Bankruptcy Court was required to rule on the Sale Motion in absence of a

settlement (*see id.* at 14-20) -- the Bankruptcy Court entered a bench ruling denying the

Conversion Motion (the "Conversion Order") (*id.* at 10-11, 21-22) and further entered orders

approving the Sale Motion (B.D.I. 100) (the "Sale Order") and the Fee Application (B.D.I. 101)

(the "Fee Order"). The Sale Order contained a provision waiving the 14-day stay provision of

Federal Rule of Bankruptcy Procedure ("Federal Rule") 6004.[5]

---

[5]B.D.I. 100, ¶ 16 ("No Stay of Order.  Notwithstanding Bankruptcy Rule 6004 and any
applicable Local Rules, this Order shall not be stayed for fourteen (14) days after the entry

On October 9, 2015, Appellants filed their notices of appeal with respect to the Conversion Order (15-914-LPS, D.I. 1), Sale Order (15-916-LPS, D.I. 1), and Fee Order (15-917-LPS, D.I. 1). On the same day, Appellants filed a motion in the Chapter 7 case to stay those orders pending their respective appeals. (B.D.I. 105) On October 20, 2015, following oral argument, the Bankruptcy Court denied Appellants' motion to stay. (D.I. 6 at 10-16; B.D.I. 127) On October 26, 2015, Appellants filed the instant Motion to Stay with this Court.

II.    Contentions

A. Sale Order

Appellants argue generally that the Bankruptcy Court erred in entering the Sale Order because there was "no economic justification" for the sale of the Property. (*See* D.I. 5, ¶ 15) Appellants also argue that the Trustee cannot sell exempted property. (*Id.*) Appellants allege that the Trustee failed to present any evidence justifying the sale price, failed to properly market the Property, and did not satisfy the business judgment standard in connection with the sale. (*Id.* at ¶ 16) For these reasons, Appellants contend that they will likely succeed on the merits and that, absent a stay, their "homelessness is surely irreparable harm," which harm they contrast with the lack of prejudice to the Trustee and creditors in the absence of a stay, as reflected by the Trustee's alleged delay in fulfilling his duties in the Chapter 7 case. (*Id.* at ¶ 17) Appellants further argue that "the public interest in reining in abusive bankruptcy practices is high" and should weigh in favor of granting the stay pending appeal. (*Id.*)

---

hereof and shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. The Trustee is not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order and the Trustee may, without further delay, take all actions and perform all acts authorized under this Order.").

The Trustee responds that Appellants have not shown a likelihood of success on the merits of their appeal of the Sale Order because bankruptcy courts have considerable discretion in deciding whether to approve a sale. (*See* D.I. 7 at ¶ 28) The Trustee argues that the record contains more than sufficient evidence to justify the sale. Indeed, in the Trustee's view, the evidence is uncontroverted, since Appellants elected not to cross-examine the Trustee, not to elicit testimony from their own witnesses, and not to admit documents into evidence. (*See id.* at ¶ 29) In the Trustee's view, Appellants possess no interest in the Property, as the land and home are assets of the estate to which Appellants have asserted no claim or exemption. (*See id.*) Further, the Trustee contends that the remaining factors weigh against a stay: the interest in closing the sale is put at risk with every delay, as the purchaser's willingness to purchase the Property depends on speedy resolution of this matter; creditor Accord asserts it is entitled to post-judgment interest, which will continue to accrue during a stay, to the detriment of other estate creditors; and the public interest lies in restoration of the Property, as the building has been vacant and in a state of disrepair for nearly five years. (*See id.* at ¶ 30)

B. Conversion Order

Appellants argue that the Bankruptcy Court erred in denying their request to convert the Chapter 7 case to Chapter 13. (*See* D.I. 5 at ¶ 5) Appellants assert that the Bankruptcy Court's ruling "ignore[d] clear Supreme Court precedent mandating voluntary conversion to a Chapter 13." (*Id.*) That is, Appellants appear to argue they have an absolute right to convert, citing *Law v. Siegel*, 13 S. Ct. 1888 (2014). (*See id.* at ¶¶ 5-7) Appellants further contend that "they have supplied amended Schedules I & J, as well as obtained employment, to assure the probability of a successful [Chapter 13] plan," which would allow them to retain the Property. (*Id.* at ¶ 6) Appellants also allege that the Bankruptcy Court failed to cite any evidence in support of its

ruling denying the Conversion Order, making it likely they will succeed on the merits of their appeal. (*See id.* at ¶ 7) Appellants assert they will suffer irreparable injury in the absence of a stay because the Bankruptcy Court's ruling "undergirds the subsequent erroneous rulings permitting the sale of Debtor's primary residence" and will result in payment to the Trustee of $80,000 in fees. (*See id.*) Appellants further argue that a stay will not harm the Trustee or creditors given that the Trustee has performed "minimal work" on the case. (*See id.* at ¶ 8) Finally, Appellants believe the public interest favors a stay based on the public's interest in faithful adherence to Supreme Court precedent. (*See id.*)

Conversely, the Trustee argues that the right to conversion is limited by Section 706(d) of the Bankruptcy Code, and the Supreme Court case cited by Appellants does not stand for an absolute right to conversion. (*See* D.I. 7 at ¶¶ 32-33) Given the state of the law, as well as Appellants' failure to submit proof of regular income or proof that they would be able to satisfy the claims against the estate under a Chapter 13 plan, the Trustee contends Appellants have failed to show a likelihood they will succeed on the merits of their appeal. (*See id.* at ¶ 34) The Trustee also asserts that Appellants have failed to demonstrate irreparable harm in absence of a stay in the form of an injury that is actual and imminent; by contrast, a stay will harm creditors by continuing to delay distributions on their claims. (*See id.* at ¶ 35) Finally, the Trustee disputes that the Supreme Court precedent cited by Appellants actually supports their appeal, defeating Appellants' public interest argument. (*See id.*)

C. Fee Order

Appellants argue generally that the Bankruptcy Court erred in granting the Fee Order because the services performed by McCarter in the Chapter 7 case were unnecessary, duplicative, and/or provided no benefit to the estate. (*See* D.I. 5 at ¶¶ 9-15) Appellants further

suggest that the Trustee has incurred fees for his personal benefit. (*See id.* at ¶ 13) They allege

that the Trustee and/or his counsel failed to fulfill certain statutory duties, undermining the

reasonableness of his counsel's fees. (*See id.* at ¶ 14) Appellants argue that the Trustee's sale of

the Property is unnecessary and is motivated by "retribution and the desire to accrue additional

administrative fees." (*See id.* ¶ 15) For these reasons, Appellants argue that success on the

merits is likely. They cite the loss of approximately $80,000 of estate funds as irreparable harm,

and submit that "after a year of inaction" there is no credible claim that meaningful prejudice to

creditors will result from the stay. (*See id.*) Finally, Appellants submit that public interest lies in

"reining in abusive bankruptcy billing practices." (*See id.*)

The Trustee counters that Appellants are not likely to succeed on the merits of their

appeal as they have introduced no evidence to dispute McCarter's billing rates, to identify

duplicative time entries, to otherwise controvert the Fee Application, or to support their

allegation that the Trustee incurred fees for his personal benefit. (*See id.* at ¶¶ 23-25) The

Trustee further argues that the Bankruptcy Court satisfied its gatekeeping function in reviewing

the Fee Application and hearing oral argument, thereby placing the public interest squarely

against a stay. (*Id.* at ¶¶ 24, 26) The Trustee emphasizes that, as a result of his efforts and those

of his counsel, all creditors will be paid in full and Appellants will receive a distribution. (*See

id.*) To the Trustee, Appellants will suffer no irreparable harm absent a stay, as the fees paid to

McCarter can be returned to the estate if the Court finds in favor of Appellants on appeal. (*See

id.* at ¶ 26)

III.    Jurisdiction

This Court has an independent duty to confirm that it has jurisdiction with respect to each

of the three appeals before considering Appellants' Motion to Stay. *See In re Philadelphia*

*Newspapers, LLC*, 418 B.R. 548, 556 (E.D. Pa. 2009). Jurisdiction over appeals from final

judgments, orders, and decrees of the Bankruptcy Court is vested in this Court. 28 U.S.C.

§ 158(a)(1). This Court also has jurisdiction to hear appeals "from interlocutory orders and

decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges

under section 157 of this title." 28 U.S.C. § 158(a)(3).

Here, Appellants have not sought leave to appeal any of the three orders. However, even

where an appellant improperly appeals a non-final, interlocutory order of the Bankruptcy Court,

the appellate court retains discretion to grant leave to hear the appeal. *Id.*

A. Sale Order

The Bankruptcy Court expressly intended the Sale Order to be a "final and appealable

order within the meaning of 28 U.S.C. § 158(a)."[6] The majority of courts to consider the issue

have concluded that an order authorizing the sale of assets of an estate is a final, appealable

order. *See, e.g., Indian River Homes, Inc. v. Sussex Trust Co.,* 108 B.R. 46, 53 at n.1 (D. Del.

1989) (citing *In re Sax*, 796 F.2d 994, 996 (7th Cir. 1986) ("Orders approving or failing to

approve the sale of a debtor's property are considered final decisions and are immediately

appealable.")); *see also In re Adelphia Recovery Trust*, 634 F.3d 678, 694-95 (2d Cir. 2011)

(stating bankruptcy order confirming asset sale is final judgment); *Hendrick v. Avent*, 891 F.2d

583, 586 (5th Cir. 1990) ("An order issued by the bankruptcy court authorizing the sale of part of

the bankrupt estate is a final judgment even though the order neither closes the bankruptcy case

---

[6] *See* Sale Order at ¶ BB ("Final Order. This Order constitutes a final and appealable order
within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004 and any
applicable Local Rules, the parties may consummate the Sale immediately upon entry of this
Order. To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal
Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly
finds that there is no just reason for delay in the implementation of this Order.").

nor disposes of any claim.") (internal footnote omitted); *Precision Industries, Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 543 (7th Cir. 2003) ("Sale orders are final, appealable orders"); *In re Bush*, 1994 WL 596762, at *1 (10th Cir. Nov. 2, 1994) (stating order authorizing sale of real property is final order conferring appellate jurisdiction). The Sale Order is just such an order. Accordingly, the Court has jurisdiction to consider the appeal of the Sale Order pursuant to 28 U.S.C. § 158(a)(1).

    B. Conversion Order

    This Court has not previously considered whether an order denying conversion of a Chapter 7 case to Chapter 13 is final and appealable. Nor is there any binding precedent on this question.

    Several circuits have treated orders denying conversion to Chapter 13 as final orders. *See Kuntz v. Shambam (In re Kuntz)*, 233 B.R. 580, 581 (B.A.P. 1st Cir. 1999) (assuming without analysis there is appellate jurisdiction to consider appeal from order denying conversion to Chapter 13); *In re Marrama*, 313 B.R. 525, 529 (B.A.P. 1st Cir. 2004) (citing *Kuntz* for its holding that bankruptcy court order denying conversion to Chapter 13 constitutes final order); *In re Cabral*, 285 B.R. 563, 571 (B.A.P. 1st Cir. 2002) (citing *Kuntz*); *Miller v. U.S. Trustee (In re Miller)*, 303 B.R. 471, 472 (B.A.P. 10th Cir. 2003), *overruled on other grounds* (citing *Kuntz*); *In re Copper*, 314 B.R. 628, 630 (B.A.P. 6th Cir. 2004), *subsequently aff'd*, 426 F.3d 810 (6th Cir. 2005) (citing *Cabral*, *Miller*, and *Kuntz*). Those circuits appear to rely on *Kuntz*, 233 B.R. at 581, a decision in which the appellate panel noted the finality of the order without analysis.

    In a non-precedential opinion, the Third Circuit has held that an order converting a Chapter 13 case to Chapter 7 is final and appealable. *See In re Fleurantin*, 2011 WL 1108246, at *2 (3d Cir. Mar. 28, 2011). Other circuits have reached the same conclusion. *See, e.g., In re*

*Rosson*, 545 F.3d 764, 770 (9th Cir. 2008) (deciding as matter of first impression to join "all other courts of which we are aware that have considered this issue" in holding "that a bankruptcy court order converting a case from one under another chapter of the Bankruptcy Code to one under Chapter 7 is a final and appealable order.").

In addressing finality, several courts have noted that an order granting a motion to convert a case from Chapter 13 to Chapter 7 is final because it denies the debtor the substantive right to reorganize under Chapter 13 and forces the debtor into liquidation. *See, e.g., In re Rebeor*, 89 B.R. 314, 320-21 (Bankr. N.D.N.Y. 1988); *In re Firstcent Shopping Center, Inc.*, 141 B.R. 546, 550-51 (S.D.N.Y. 1992) (citing *Rebeor*). Under this reasoning, the Bankruptcy Appellate Panel of the First Circuit has concluded that "[s]imilarly, orders denying a debtor's request to convert from Chapter 7 to Chapter 13 pursuant to § 706(a) are final orders." *Cabral*, 285 B.R. at 571 (citing *Rebeor*, *Firstcent*, and *Kuntz*).

In bankruptcy cases, finality is construed more broadly than for other types of civil cases. *See In re Marvel Entm't Group, Inc.*, 140 F.3d 463, 470 (3d Cir. 1998). "In determining whether an order of the Bankruptcy Court is final, the Court is required to take a flexible, pragmatic approach." *In re Reliant Energy Channelview, LP*, 397 B.R. 697, 699 (D. Del. 2008). "Although no specific combination of factors is dispositive on the question of finality, the Court should consider, among other things: (1) whether the order leaves additional work to be done by the Bankruptcy Court, (2) whether the order implicates purely legal issues, (3) the impact of the Bankruptcy Court's order upon the assets of the debtor's estate, (4) the necessity for further fact-finding on remand to the Bankruptcy Court, (5) the preclusive effect of the District Court's decision on the merits of subsequent litigation; and (6) the furtherance of judicial economy." *Reliant*, 397 B.R. at 699 (citing *U.S. v. Pelullo*, 178 F.3d 196, 200-01 (3d Cir. 1999)). "Of these

factors, the most significant is the impact upon the assets of the Debtors' estate." *Id.* (citing *In re Market Square Inn, Inc.*, 978 F.2d 116, 120 (3d Cir. 1992)).

Applying these factors here, the Conversion Order leaves additional work to be done by the Bankruptcy Court – as further proceedings are contemplated before the Chapter 7 case comes to an end – but still the Conversion Order is also "a final adjudication of the debtor's bankruptcy status that subjects the debtor's assets to involuntary liquidation." *In re McGinnis*, 296 F.3d 730 (8th Cir. 2002) (considering appeal of involuntary order for relief under Chapter 7 and citing to Ninth Circuit's analysis in *In re Mason*, 709 F.2d 1313, 1315-18 (9th Cir. 1983)). The Conversion Order had a preclusive effect on further litigation regarding Appellants' right to convert, and consideration of the Conversion Order will require no remand for additional fact finding by the Bankruptcy Court. *See In re Armstrong World Industries*, 432 F.3d 501, 511 (3d Cir. 2005). Moreover, practical considerations in the interest of judicial economy favor this Court considering the appeal now, as opposed to at the close of the Chapter 7 case. *See In re Christian*, 804 F.2d 46, 48 (3d. Cir. 1986) (holding that denial of motion to dismiss Chapter 7 case is immediately appealable under practical approach to finality because, otherwise, "the entire bankruptcy proceedings must be completed before it can be determined whether they were proper in the first place").

Finally, considering "the most significant factor" -- the impact of the Conversion Order on the assets of the debtors' estate -- the Conversion Order results in the continuation of the Chapter 7 case and the potential liquidation of the Appellants' assets, which cannot easily be undone. Once the Appellants' assets are liquidated, it is virtually impossible to reassemble them. *See In re Young*, 237 F.3d 1168, 1173 (10th Cir. 2001). In ruling that an order converting a debtor's Chapter 13 case to a Chapter 7 liquidation was final and appealable, the Bankruptcy

Court for the Northern District of New York observed: "immediate review [i]s necessary to protect Debtor's substantive rights to reorganize in Chapter 13 and to prevent irreparable harm through the potential loss of his property sold to good faith purchasers." *Rebeor,* 89 B.R. at 320-21. Where the order at issue denies conversion to another chapter and results in the debtor remaining in Chapter 7, the same concerns are implicated.

In consideration of the above factors, and recognizing the Third Circuit's practical approach to finality, the Court concludes that the Conversion Order is final and appealable.

C. Fee Order

The Bankruptcy Court's order approving McCarter's retention as counsel to the Trustee expressly provided that the firm would be compensated in accordance with Sections 330 and 331 of the Bankruptcy Code. (B.D.I. 19 at ¶ 3) ("McCarter & English shall be compensated in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules, the Local Rules, the Guidelines and any other procedures as may be fixed by order of this Court.") Section 331 of the Bankruptcy Code permits professionals to apply to the Court not more than once every 120 days for interim compensation and expense reimbursement and authorizes the Court to allow and order disbursement to the applicant of compensation and reimbursement that is otherwise allowable under Section 330. McCarter's Fee Application sought allowance of fees for services rendered and reimbursement of expenses incurred for the interim period of June 27, 2014 through August 31, 2015. (B.D.I. 81) The Fee Order, authorizing compensation and reimbursement for that period, is an interim award of compensation under Section 331.

This Court has held that an interim compensation order is an interlocutory order. *See In re Finova Grp., Inc.*, 2008 WL 522965, at *3 (D. Del. Feb. 26, 2008) (fee capping orders at issue

are "akin to interim compensation orders which are interlocutory in nature"). Other courts have

reached the same conclusion. *See, e.g.*, *Matter of Evangeline Refining Co.*, 890 F.2d 1312, 1321

(5th Cir. 1989) ("[I]nterim awards are subject to final adjustments and, as such, are fully

reviewable [by the bankruptcy court]."); *In re Hillsborough Holdings Corp.*, 164 B.R. 673, 674

(M.D. Fla. 1994) ("It is well established that interim awards of compensation under 11 U.S.C. §§

330 and 331 are interlocutory orders of the bankruptcy court, and as such they generally are not

considered final judgments.").

Because the Fee Order is interlocutory, not final, the Court will determine whether the

Court should exercise its discretion to hear the appeal. Treating Appellants' notice of appeal as a

motion for leave to appeal pursuant Federal Rule 8004(d),[7] the Court will not exercise its

discretion to grant leave to hear the appeal, for the reasons set forth below.

No criteria are provided by Section 158(a) or Federal Rule 8004 for District Courts to

determine whether to exercise discretion in granting leave to appeal interlocutory bankruptcy

orders. *See In re Marvel Entm't Group, Inc.*, 209 B.R. 832, 837 (D. Del. 1997). "In deciding

whether an interlocutory order is appealable in the bankruptcy context, courts have typically

borrowed the standard found in 28 U.S.C. § 1292(b), which governs whether an appeal of a

district court's interlocutory order to a court of appeals is warranted." *In re SemCrude, L.P.*,

2010 WL 4537921, at *2 (D. Del. Oct. 26, 2010); *see also Philadelphia Newspapers,* 418 B.R. at

556 ("Based upon the decision of the Third Circuit in *Bertoli v. D'Avella (In re Bertoli),* 812 F.2d

---

[7] Federal Rule 8004(d) provides, in relevant part: "If an appellant timely files a notice of appeal under this rule but does not include a motion for leave, the district court . . . may order the appellant to file a motion for leave, or treat the notice of appeal as a motion for leave and either grant or deny it."

136, 139 (3d Cir. 1987), courts within this Circuit confronted with the decision whether to grant leave to allow an interlocutory appeal are informed by the criteria in 28 U.S.C. § 1292(b).").

Under the standards of Section 1292(b), an interlocutory appeal is permitted only when the order at issue (1) involves a controlling question of law upon which there is (2) substantial grounds for a difference of opinion, and (3) if appealed immediately, may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b); *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 754 (3d Cir. 1974). "[T]hese . . . criteria do not limit the Court's discretion to grant or deny an interlocutory appeal." *In re SemCrude,* 407 B.R. 553, 557 (D. Del. 2009).

Moreover, entertaining an interlocutory order under Section 1292(b) is appropriate only when the party seeking leave to appeal "establishes [that] exceptional circumstances justify a departure from the basic policy of postponing review until after the entry of final judgment." *In re Del. and Hudson Ry. Co.,* 96 B.R. 469, 473 (D. Del. 1989), *aff'd,* 884 F.2d 1383 (3d Cir. 1989). In part, this stems from the fact that "[p]iecemeal litigation is generally disfavored by the Third Circuit." *SemCrude,* 2010 WL 4537921, at *2 (citing *In re White Beauty View, Inc.,* 841 F.2d 524, 526 (3d Cir.1988)). "Because an interlocutory appeal represents a deviation from the basic judicial policy of deferring review until the entry of a final judgment, the party seeking leave to appeal an interlocutory order must also demonstrate that exceptional circumstances exist." *Id.* Finally, leave to file an interlocutory appeal may be denied for "entirely unrelated reasons such as the state of the appellate docket or the desire to have a full record before considering the disputed legal issue." *Katz,* 496 F.2d at 754.

An interlocutory appeal of the Fee Order is not supported by these considerations. Whether the legal services benefitted the estate is not a controlling question of law upon which there are substantial grounds for difference of opinion. A "controlling question of law" is one

which would be reversible error on final appeal. *See Katz*, 496 F.2d at 755. As the Bankruptcy

Court noted in its ruling, "the standards for approval of a fee application are not in meaningful

controversy in this jurisdiction." (D.I. 7-3, 10/8/15 Hrg Tr. at 23) The Bankruptcy Court

approved the Fee Application based on its own "carefu[l] review," finding it was consistent with

the provisions of Sections 327, 330, and 331, as well as applicable local rules and guidelines

promulgated by the Office of the United States Trustee. (*See id.* at 23-24) There are not

substantial grounds for a difference of opinion on the requirements for professional

compensation set forth in the Bankruptcy Code. Moreover, appeal of the Fee Order will not

materially advance the litigation between the parties, as there is no discrete dispute that has been

conclusively and finally resolved in the Fee Order -- an order which remains subject to final

review and adjustment by the Bankruptcy Court (under Section 330). To the contrary, to

consider an appeal of the Fee Order at this stage of the ongoing Chapter 7 case would only serve

to create additional litigation. Finally, Appellants have identified no "exceptional

circumstances" to justify review of the Fee Order beyond payment of legal fees from estate

funds. (D.I. 5 at ¶ 15) This is not an exceptional case justifying a departure from the statutory

discretion Bankruptcy Courts are granted to order interim allowance and payment of professional

fees throughout a case and final allowance at the conclusion of a case.

 The Court finds no meritorious basis upon which to grant Appellants leave to appeal the

Fee Order. Thus, the Court will not consider the Motion to Stay as it applies to the Fee Order.

IV. <u>Legal Standards</u>

 This Court reviews the Bankruptcy Court's findings of fact for clear error and exercises

plenary review over questions of law. *See Am. Flint Glass Workers Union v. Anchor Resolution

Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). With mixed questions of law and fact, the Court must

accept the Bankruptcy Court's "finding of historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the [bankruptcy] court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" *Mellon Bank, N.A., v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991) (internal citation omitted).

"The granting of a motion for stay pending appeal is discretionary with the court." *In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *2-3 (Bankr. D. Del. Mar. 27, 2001). Appellants bear the burden of proving that a stay of each order is warranted based on the following criteria: (a) whether the movant has made a strong showing that it is likely to succeed on the merits; (b) whether the movant will be irreparably injured absent a stay; (c) whether a stay will substantially injure other interested parties; and (d) where the public interest lies. *See Republic of Phil. v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991). "When considering the above factors in a preliminary injunction case, [this Court has] discussed that 'equal weight for each factor is not required since the formula cannot be reduced to a set of rigid rules.'" *In re Tribune,* 477 B.R. 465, 475 (Bankr. D. Del. 2012) (quoting *Honeywell Int'l. Inc. v. Universal Avionics Sys. Corp.*, 397 F. Supp. 2d 537, 548 (D. Del. 2005)). "Thus the analysis is flexible." *Id.*

The Third Circuit recently "provide[d] guidance on how to conduct a balancing of the stay factors" and adopted a "sliding-scale approach." *In re Revel AC, Inc.*, 802 F.3d 558, 567-68 (3d Cir. 2015). As an initial matter, the *Revel* Court noted that the most critical factors, according to the Supreme Court, are the first two: whether the stay movant has demonstrated (1) a strong showing of the likelihood of success and (2) that it will suffer irreparable harm (that is, harm that cannot be prevented or fully rectified by a successful appeal). *See id.* at 568 (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009) (internal quotation marks and citations omitted).

With respect to the first factor -- a strong showing of the likelihood of success -- the *Revel* Court noted, "a sufficient degree of success for a strong showing exists if there is a reasonable chance, or probability, of winning. Thus, while it is not enough that the chance of success on the merits be better than negligible, the likelihood of winning on appeal need not be more likely than not." *Id.* at 568-69 (internal quotation marks and internal citations omitted). "On the second factor the applicant must demonstrate that irreparable injury is **likely** in the absence of a stay. While a reference to 'likelihood' of success on the merits has been interpreted by courts to cover the generic range of outcomes, for irreparable harm we understand the Supreme Court's use of 'likely' to mean more apt to occur than not." *Id.* at 569 (internal quotation marks and citations omitted).

In deciding how strong a case a stay movant must show, under the 'sliding-scale' approach "the necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other stay factors. Stated another way, the more likely the plaintiff is to win, the less heavily need the balance of harms weigh in its favor; the less likely it is to win, the more need it weigh in its favor." *Id.* (internal quotation marks and citations omitted). "Keeping in mind that the first two factors are the most critical, if the chance of success on the merits is only better than negligible and the possibility of irreparable injury is low, a stay movant's request fails." *Id.* at 570 (internal quotation marks and citations omitted). "Likewise, even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the stay opponent if a stay is granted, it is still required to show, at a minimum, serious questions going to the merits." *Id.*

The Third Circuit concluded its guidance by noting that all four stay factors are interconnected. Thus, the analysis should proceed as follows:

> Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) **and** (b) will suffer irreparable harm absent a stay? If it has, we balance the relative harms considering all four factors using a 'sliding scale' approach. However, if the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis.

*Id.* at 571 (internal quotation marks and citations omitted).

V.   Discussion

A.  Sale Order

Appellants have not made a strong showing that they are likely to succeed on the merits of their appeal of the Sale Order.

Beginning with Appellants' challenges to the Bankruptcy Court's legal conclusions, Appellants are not likely to succeed on their argument that that there was "no economic justification for the sale" of the Property under Section 363 of the Bankruptcy Code. (D.I. 5 at ¶ 15) The Bankruptcy Court has "considerable discretion" in deciding whether to approve a sale. *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 152-53 (D. Del. 1999). "In determining whether to authorize use, sale or lease of property of the estate under [Section 363], courts require the [Trustee] to show that a sound business purpose justifies such actions." *Id.* at 153. If the bankruptcy trustee's decision evidences a sound business purpose, then the Bankruptcy Court should approve the sale. *See id.*

In evaluating whether a sound business purpose justifies sale of property under Section 363, courts consider a variety of factors, which essentially represent a "business judgment" test. *See id.* at 153. Factors may include the proportionate value of the asset to the bankruptcy estate as a whole; the amount of elapsed time since the filing; the effect of a proposed distribution; the

difference between the proceeds to be realized versus the appraised value of the property; and whether the asset is increasing or decreasing in value. *See id.* at 153-54.

Appellants have offered no support for their assertion that the Bankruptcy Court erred in in concluding that the Trustee satisfied the business judgment standard in connection with the sale. The record reflects that the Bankruptcy Court considered the appropriate factors, including, *inter alia*, that "[the Trustee] and his professionals have conducted [a] solicitation and marketing effort consistent with the Court's direction and consistent with appropriate commercial practices and standards, and again consistent with the exercise of [the Trustee]'s fiduciary and statutory duties as the Chapter 7 trustee." (D.I. 7-3, 10/8/15 Hr'g. Tr. at 22) The Bankruptcy Court further considered in its analysis that the marketing process concluded with a "substantial bid" which, based on the Trustee's testimony, makes possible "the prospect of a complete and full distribution . . . to all holders of secured and general unsecured claims, as well as a meaningful returned distribution to the debtors." (*Id.*) For these reasons, the Bankruptcy Court was satisfied that the sale of the Property was consistent with the sound exercise of the Trustee's business judgment. (*See id.* at 23) Appellants have not pointed to any error in the Bankruptcy Court's analysis or conclusion. For these reasons, the Court does not view the Appellants as having shown a "reasonable chance or probability" of winning on appeal.

Appellants are unlikely to succeed on their argument that that the Trustee cannot sell the Property because it is exempt property. (D.I. 5 at ¶ 15) A debtor's Schedule C lists property that the debtor claims as exempt from the bankruptcy estate. Appellants' Amended Schedule C reflects that Appellants list the value of their claimed exemption in the Property as $0.00. (*See* B.D.I. 46-1) The docket reflects no further amendments to Schedule C. Appellants cite to *Law v. Siegel*, 134 S.Ct. 1188 (2014), in support of their argument that the Trustee cannot sell

exempted property, but that case does not address this issue and does not help Appellants' legal argument. For these reasons, Appellants have not made a strong showing of probability of success on the merits of their legal argument.

Appellants have also not made a strong showing that they are likely to succeed in demonstrating that the Bankruptcy Court's findings of fact were clearly erroneous. Appellants argue there was "no evidence in the record justifying a sale price at this level, and no testimony or otherwise concerning the Trustee's marketing efforts." (D.I. 5 at ¶ 16) However, the record includes the Trustee's declaration in support of the sale, which sets forth the Trustee's marketing efforts and also includes the Buckley Appraisal, which was introduced into evidence and admitted without objection. (*See* D.I. 7-3, 10/8/15 Hr'g. Tr. at 5; B.D.I. 90-1) Based on this evidence, the Bankruptcy Court found that the proposed sale was the end of a fair, open, transparent, and substantial process, directed by the Court, conducted pursuant to an order of the Court, and compliant with Section 363 of the Bankruptcy Code. (*See* D.I. 6 at 13-14) Appellants have introduced no evidence to controvert the facts set forth in the Trustee's declaration or the Buckley Appraisal. For these reasons, the Court does not view the Appellants as having shown any "reasonable chance, or probability" of succeeding in demonstrating the Bankruptcy Court's findings of fact were erroneous. *See Revel*, 802 F.3d at 568-69.

Because Appellants have not made the requisite showing that they are likely to succeed on the merits of their appeal, the inquiry into the balance of harms and the public interest is unnecessary, and the stay is denied without further analysis. *See id.* at 571.

B. Conversion Order

Appellants have not made a strong showing that they are likely to succeed on the merits of their appeal of the Conversion Order.

Appellants are not likely to succeed on their legal argument that that they had an absolute right to convert their Chapter 7 case to Chapter 13 under Section 706(a) and Supreme Court precedent. (*See* D.I. 5 at ¶ 5) Section 706(a) provides that a "debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title." 11 U.S.C. § 706(a). However, the right to convert is not absolute. Instead, a debtor's right to convert is limited by Section 706(d) of the Bankruptcy Code, which states: "Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title ***unless the debtor may be a debtor under such chapter***." 11 U.S.C. § 706(d) (emphasis added). Hence, Section 706(d) expressly conditions Appellants' right to convert on their ability to qualify as debtors under Chapter 13. *See Marrama v. Citizens Bank of Massachusetts*, 127 S.Ct. 1105, 1110 (2007).

Section 109(e) sets forth certain criteria to be a Chapter 13 debtor. Specifically, it provides:

> Only an individual ***with regular income*** that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $383,175 and noncontingent, liquidated, secured debts of less than $1,149,525, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $383,175 and noncontingent, liquidated, secured debts of less than $1,149,525 may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e) (emphasis added). Thus, under the clear language of the statute, the right to convert is not absolute but is dependent on (at least) whether the debtor is has "regular income."

Because the right to convert is expressly conditioned by the language of Section 706(d), and in turn the eligibility to be a debtor under Chapter 13 requires compliance with the requirements of Section 109(e), and factoring in the Bankruptcy Court's discretion under

*Marrama*, Appellants are not likely to succeed in demonstrating that the Bankruptcy Court erred in not recognizing an absolute right of conversion.

Appellants further argue that the Bankruptcy Court erred by ignoring *Law v. Siegel*, 134 S. Ct. 1188 (2014), as "clear Supreme Court precedent mandating voluntary conversion to Chapter 13." However, *Siegel* does not address conversion and does not stand for that proposition.

Nor have Appellants demonstrated a substantial likelihood of showing that the Bankruptcy Court's factual findings were clearly erroneous. As noted above, in order to grant the Conversion Motion, the Bankruptcy Court would have to had found that Appellants could be debtors under Chapter 13. *See* 11 U.S.C. § 706(d). To be a debtor under Chapter 13, Section 109(e) requires, *inter alia*, "an individual with regular income." 11 U.S.C. § 109(e). The income need not come from a certain source; rather the income need only be regular and stable enough to ensure that a debtor is able to make payments under a Chapter 13 plan. *See e.g., In re Wilhelm*, 6 B.R. 905, 908 (Bankr. E.D.N.Y. 1980). The burden of establishing the regularity and stability of income is on the debtor. *See In re Antoine*, 208 B.R. 17, 19 (Bankr. E.D.N.Y. 1997). "Thus, where a debtor fails to produce evidence of the existence of a regular income, [the debtor] does not qualify for Chapter 13 relief under 11 U.S.C § 109(e)." *Wilhelm,* 6 B.R. at 908.

Here, Appellants failed to submit tax returns, pay stubs, a declaration, or testimony to show they meet the regular income requirement. Appellants purport (in the briefs) to receive disability benefits, but this information was contradicted by the Debtors' Statement of Financial Affairs, and Appellants presented no evidence that disability payments continue to this date or are sufficient to support a Chapter 13 plan. While Appellants filed Amended Schedules I & J one day prior to the September 23, 2015 hearing on the Sale Motion (*see* B.D.I. 92, Amended

Schedule I (listing employment of Mark Culp but not indicating any length of employment) and Amended Schedule J (listing monthly net income of $1,292.85)), the Bankruptcy Court had "significant doubts regarding the viability of a Chapter 13 case, were it filed." (D.I. 7-3, 10/8/15 Hrg. Tr. at 21-22) Without evidence in the record to carry their burden of establishing receipt of regular income, Appellants' chances of success on appeal are not "significantly better than negligible." *See Revel*, 802 F.3d at 568-69.[8]

Because Appellants have not made the requisite showing that they are likely to succeed on the merits of their appeal, the inquiry into irreparable harm, the balance of harms, and the public interest is unnecessary, and the stay will be denied without further analysis. *Id.* at 571.

Conclusion

The Fee Order is not a final order, and for the reasons set forth above, this Court will not exercise its discretion to allow interlocutory appeal. This Court further denies Appellants' Motion to Stay as to the Conversion Order and the Sale Order.[9]

November 17, 2015
Wilmington, Delaware

HON. LEONARD P. STARK
UNITED STATES DISTRICT COURT

---

[8] The right of conversion is further limited by Bankruptcy Court's discretion to deny conversion upon evidence of bad faith. *See Marrama,* 127 S.Ct. at 1111-12 (noting that Bankruptcy Code specifically grants bankruptcy judges "broad authority . . . to take any action necessary or appropriate 'to prevent an abuse of process'") (quoting 11 U.S.C. § 105(a)). Here, the Bankruptcy Court expressed skepticism as to whether the Conversion Motion was brought in good faith. (D.I. 6, 10/20/15 Hrg. Tr. at 12)

[9] The Court echoes the sentiment expressed by the Bankruptcy Court, which stated it was "certainly sympathetic and frankly solicitous of the debtors' desire to keep their home. But the fact of the matter is that they are debtors in a Chapter 7 proceeding, and there are consequences to the application of the bankruptcy laws to their situation." (D.I. 6, 10/20/15 Hrg. Tr. at 14) For the reasons explained at length in this Memorandum Order, the Court concludes that Appellants have failed to show a likelihood of succeeding on the merits of their appeals, which contend that the Bankruptcy Court erred in how it applied the Bankruptcy Code to their situation.