IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | |
| MARK A. CULP and PATRICIA J. CHAMBERLAIN, | : | Bankr. Case No. 14-11592-BLS |
| | : | |
| Debtors. | : | Chapter 7 |
| | : | |
| MARK A. CULP and PATRICIA J. CHAMBERLAIN, | : | |
| | : | |
| Appellants, | : | Civ. No. 15-914-LPS |
| | : | Civ. No. 15-916-LPS |
| v. | : | Civ. No. 15-917-LPS |
| | : | |
| CHARLES A. STANZIALE, JR., Chapter 7 Trustee, | : | |
| | : | |
| Appellee. | : | |

## MEMORANDUM ORDER

At Wilmington on this 5th day of February, 2016:

This matter coming before the Court upon Appellants' appeal of three orders entered by

The Honorable Brendan L. Shannon on October 8, 2015 in the above-captioned Chapter 7

proceedings, including: (i) appeal (15-914-LPS, D.I. 1) of a bench ruling denying Appellants'

motion to convert their Chapter 7 case to a case under Chapter 13 (D.I. 28, 10/18/15 Hr'g. Tr. at

AB49-50, AB60-61) (the "Conversion Order"); appeal (15-916-LPS, D.I. 1) of an order

approving the sale of certain assets (Bankr. Case No. 14-11592-BLS, D.I. (hereinafter "B.D.I.")

100) (the "Sale Order"); and appeal (15-917-LPS, D.I. 1) of an order approving the interim fee

application of the law firm of McCarter & English (B.D.I. 101) (the "Fee Order"); and the Court

having entered the Memorandum Order on November 17, 2015 (15-917-LPS, D.I. 14) (the

"November 17 Order") determining that the Fee Order is not a final order and further

determining not to exercise discretion to allow interlocutory appeal of the Fee Order; and having

considered the parties' papers submitted in connection with the appeal of the Conversion Order
and Sale Order;

IT IS HEREBY ORDERED that, for the reasons stated in the November 17 Order, the
appeal of the Fee Order is DISMISSED; and it is further

ORDERED that, for the reasons that follow, the Conversion Order is AFFIRMED and
the appeal of the Sale Order is DISMISSED.

I.     Relevant Background[1]

These appeals arise from a Chapter 7 trustee's proposed sale of real property that suffered
significant fire damage and was encumbered by liens in excess of $350,000. Appellants owned
certain mixed-use real property known as 30680 Cedar Neck Road in Ocean View, Delaware
(the "Property"), which they previously operated as a bed and breakfast establishment. On or
about August 8, 2005, Appellants executed a promissory note in the amount of $309,000. To
secure their obligations under the promissory note, Appellants executed a mortgage encumbering
the Property. On November 8, 2010, the Property sustained significant fire damage. Thereafter,
Appellants were the beneficiaries of certain insurance proceeds for their fire-related loss as well
as other insured losses. On February 26, 2013, the promissory note and mortgage were assigned
to Green Tree Servicing, LLC ("Green Tree").

On June 27, 2014 ("Petition Date"), Appellants filed a voluntary petition for relief under
Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of
Delaware (the "Bankruptcy Court") (B.D.I. 1), and Charles A. Stanziale, Jr. was appointed as

---

[1] The Court presumes the parties' familiarity with the background of this case. Salient facts,
however, have been set forth for ease of reference. The parties' briefs were filed in each of the
three above-captioned appeals. Unless otherwise indicated, this Memorandum Opinion refers to
those briefs as docketed in 15-914-LPS. Wherever possible, citations to the record refer to the
Appendix to Appellee's Answering Brief (15-914-LPS, D.I. 28) (hereinafter "AB__").

Chapter 7 Trustee (the "Trustee") in the case.  Appellants did not claim an exemption in the

Property or in the insurance proceeds.  (*See* AB337, AB380, AB391) (listing value of claimed

exemption as $0.00))  As of the Petition Date, Green Tree asserted a secured claim against the

Property for approximately $280,000 and was holding approximately $74,000 of insurance

proceeds in an escrow account.  (*See* AB192-301 (Declaration of Charles A. Stanziale, Jr.

Esquire (hereinafter "Stanziale Decl.")) at ¶ 6)  Accord Restoration, Inc. ("Accord") asserted a

mechanic's lien against the Property in the amount of $39,630.71, plus unpaid interest, which

was related to certain construction activities undertaken by Accord for which it did not receive

payment.  (*See id.*)  Accord filed a proof of claim in the Chapter 7 case in the amount of

$131,210.33, asserting that $74,409.75 of its claim was secured.  (*See* AB431-36)

      This dispute arises from the parties' disagreement regarding the value of the fire-

damaged Property and the Trustee's decision to sell the Property.  At their Section 341

examination, Appellant Mark Culp testified that the fire damage to the Property was significant,[2]

and Appellants have estimated the fair market value of the Property at $100,000.  (*See* Stanziale

Decl., AB192-94 at ¶ 7, ¶¶ 13-14; *see also* AB337, AB380, AB391 (Appellants' Schedule C, and

subsequent amendments))  Appellants' estimate was based on "a general price that you would

find on Trulia or Zillow" minus the cost of repair and restoration (established by a contractor's

quote for approximately $308,000).  (*See* Stanziale Decl., AB203 (7/21/14 Transcript of Section

341 examination))  The estimated cost of the repair was also listed on the Appellants' Schedules

at $308,078.  (*See id.* at AB200 (incorporating Amended Schedule G))  Based upon his initial

review, the Trustee valued the Property at approximately $143,423.  (*See id.* at AB195-96, ¶ 16)

---

[2] "The upstairs, significant fire damage, penetrations through the roof, walls; significant smoke, water damage, to the first floor, and resulting damage: wiring, plumbing, A/C ductwork, and the crawlspace underneath the house." (Stanziale Decl. at AB206)

The Trustee subsequently engaged in negotiations with Accord for sale of the Property. (*See id.* at AB196, ¶ 18) Accord made an initial offer of $260,000, which the Trustee rejected. (*See id.*) Negotiations between the parties continued for several months, until the Trustee ultimately negotiated an asset purchase agreement to sell the Property "as is" to Accord for $290,000. (*See id.*)

A. The Sale Motion

On July 2, 2015, the Trustee filed a motion with the Bankruptcy Court (the "Sale Motion") seeking approval of the Trustee's sale and marketing efforts, bid deadlines, and a form of asset purchase agreement pursuant to which Accord would purchase the Property. (*See* AB75) On July 28, 2015, the Bankruptcy Court approved the bidding and sale procedures. (*See* AB141) (the "Bid Procedures Order")) Thereafter, the Trustee retained an appraiser, which estimated the value of the Property to be $175,000 (the "Buckley Appraisal"). (*See* Stanziale Decl. at AB197, ¶¶ 22-24 (discussing same); *see also* AB251-78 (incorporating Buckley Appraisal)) The Trustee also approached several real estate brokers regarding the marketing of the Property, each of which declined due to the condition of the Property and liens encumbering it. (*See* Stanziale Decl. at AB197, ¶ 25) The Property was advertised for sale online and in two local news publications. (*See id.* at AB198, ¶ 26 (discussing same); AB279-87 (incorporating publications)) No bids were received by the deadline. (*See id.* at AB198, ¶ 27)

The Bankruptcy Court scheduled a final hearing on the Sale Motion for September 23, 2015. Appellants objected to the proposed sale on the bases that the Trustee had failed to establish the fair market value of the Property, Appellants had filed a motion to convert their Chapter 7 case to Chapter 13, and "[c]onversion to a Chapter 13 removes the Chapter 7 Trustee's power to sell the [Appellants'] property." (B.D.I. 83, ¶ 4) In support of the Sale Motion, the

Trustee filed a reply and declaration, which incorporated the Buckley Appraisal by reference. (*See* AB172-89 (Trustee's reply in support of Sale Motion) at ¶ 24; AB251-78 (incorporating Buckley Appraisal)) The Trustee asserted that the proposed sale, at a price that significantly exceeded the value of the Property as estimated by Appellants and by the Trustee's appraiser, would result in the payoff of the secured lender in full, the satisfaction of all professional fees, full distribution on claims to all known allowed unsecured creditors, and a considerable distribution to the Appellants – and, therefore, the proposed sale was a sound exercise of the Trustee's business judgment. (*See* AB172 at ¶ 1; AB182-84 at ¶¶ 32-35)

   B. The Conversion Motion

   On August 27, 2015 – fourteen months after the Petition Date, following the entry of the Bid Procedures Order, but prior to the hearing to approve the sale on a final basis – Appellants filed a motion to convert their Chapter 7 case to a case under Chapter 13 (the "Conversion Motion"). (*See* AB302-05)[3] The Conversion Motion was five sentences in length. (*See id.* at AB302) Appellants did not attach any documents or proof of income, or cite any law in support of the relief sought. (*See id.*)

---

[3] The Bankruptcy Code provides diverse courses debtors may pursue to gain discharge of their financial obligations and thereby obtain a "fresh start." *Marrama v. Citizens Bank of Mass.*, 127 S. Ct. 1105, 1107 (1991) (internal citations and quotation marks omitted). Chapter 7 and Chapter 13 proceedings are the "two roads individual debtors may take." *Harris v. Viegelahn*, 135 S. Ct. 1829, 1835 (2015). "Chapter 7 allows a debtor to make a clean break from his financial past, but at a steep price: prompt liquidation of the debtor's assets. When a debtor files a Chapter 7 petition, his assets, with specified exemptions, are immediately transferred to a bankruptcy estate." *Id.* at 1835; *see also* 11 U.S.C. § 541(a)(1). "Chapter 13 works differently . . . . Chapter 13 allows a debtor to retain his property if he proposes, and gains court confirmation of, a plan to repay his debts over a three- to five-year period." *Id.*; *see also* §§ 1306(b), 1322, 1327(b). "Payments under a Chapter 13 plan are usually made from a debtor's 'future earnings or other future income.'" *Harris*, 135 S. Ct. at 1835; *see also* 11 U.S.C. § 1322(a)(1). "Accordingly, the Chapter 13 estate from which creditors may be paid includes both the debtor's property at the time of his bankruptcy petition, and any wages and property acquired after filing." *Harris*, 135 S. Ct. at 1835; *see also* § 1306(a).

The Trustee and Accord opposed the Conversion Motion asserting, *inter alia*, that Appellants were ineligible to be debtors under Chapter 13, pursuant to Sections 109 and 706 of the Bankruptcy Code. (*See* AB306-11 (Trustee's objection to Conversion Motion); AB312-25 (Accord's objection to Conversion Motion)) Accord argued that neither of the Appellants was employed and had no income to propose a feasible Chapter 13 plan. (*See* AB316 at ¶ 12) Accord argued that Appellants' Schedules I and J listed federal benefits of $2,433.23 per month and living expenses at $3,048.00 per month – leaving a deficiency of $608.65 per month. Accord further argued that the Conversion Motion had been filed "[i]n an attempt to take control of the estate assets, further delay the case, and circumvent the [Bid Procedures] order." (*See id.* at AB316, ¶¶ 12-13) (also noting Appellants' continued litigation position that "substantial insurance proceeds currently held by the Trustee, which could possibly be used to fund a Chapter 13 plan[,] are not estate assets")

The Trustee also argued that Appellants failed to put forth a legal or factual basis from which the Bankruptcy Court could conclude they were eligible to convert to Chapter 13. (*See* AB309 at ¶ 14) The Trustee further argued that while Appellants purported to receive federal benefits as of the Petition Date, that "representation [wa]s contradicted by the Debtors' Statement of Financial Affairs which indicates that the Debtors do not receive any money outside of their employment or operation of a business." (*See* AB307 at ¶ 6) (citing B.D.I. 1 at 28)

A hearing on the Conversion Motion was set for September 23, 2015. (*See* AB304). On the eve of the September 23 hearing, Appellants filed Amended Schedules I and J, listing Appellant Mark Culp as employed. (*See* B.D.I. 92)

C. The Fee Application

On September 3, 2015, the law firm of McCarter & English ("McCarter"), as counsel to the Trustee, filed its first interim fee application, covering the period of June 27, 2014 through August 31, 2015 (the "Fee Application"). (*See* AB439-97) The Fee Application set forth a description of legal services McCarter had rendered to the Trustee in connection with the Chapter 7 case. (*See* AB440-48, ¶¶ 8-26) Appellants filed an objection to the Fee Application, alleging generally that the case had "languished," that significant legal fees could not have accrued during the period covered by the Fee Application, and that legal fees associated with the proposed sale of the Property and Sale Motion should not be approved because the Sale Motion had conferred no benefit on the estate. (*See* B.D.I. 86 at ¶¶ 1, 4, 5-7)

D. The Bankruptcy Court Rulings

On September 23, 2015, the Bankruptcy Court held a hearing to consider the Conversion Motion, the Sale Motion, and the Fee Application. (*See* AB513-70, 9/23/15 Hr'g. Tr.) At that hearing, the Bankruptcy Court heard oral argument, admitted the Trustee's declaration into evidence (*see id.* at AB517), and twice invited Appellants to cross-examine the Trustee (*see id.* at AB527, AB542). The transcript reflects that Appellants elected neither to cross-examine the Trustee or to call any witnesses of their own. (*See id.*) Following oral argument, the Bankruptcy Court clearly indicated its inclination to deny the Conversion Motion and to approve the Sale Motion and Fee Application. (*See id.* at AB557-60) The Bankruptcy Court then encouraged the parties to discuss, at a recess, whether a settlement might be reached that would avoid the need for the entry of the orders. (*See id.* at AB557) Following the recess, the parties believed that they had reached a framework for an agreement, and the Bankruptcy Court instructed the parties to file their agreement in the form of a stipulation no later than September 30, 2015. (*See id.* at

AB560, 565)  The Bankruptcy Court deferred ruling on the Sale Motion, Fee Application, and

Conversion Motion until October 8, 2015.  (*Id.*)

At a hearing held on October 8, 2015, the parties reported to the Bankruptcy Court that

while the Trustee, Accord, and Green Tree had reached an agreement as to the form of a

stipulation, an agreement could not be reached with Appellants.  (AB40-66, 10/8/15 Hr'g. Tr. at

AB47)  After informing Appellants of the risks of their legal strategy – including certain loss of

the Property if the Bankruptcy Court was required to rule on the Sale Motion in the absence of a

settlement (*see id.* at AB53-59) – the Bankruptcy Court entered a bench ruling denying the

Conversion Motion (*id.* at AB60-61) and entered the Sale Order (AB571-82) and the Fee Order

(AB512).  The Sale Order contained a provision waiving the 14-day stay provision of Federal

Rule of Bankruptcy Procedure ("Federal Rule") 6004.[4]

On October 9, 2015, Appellants filed their notices of appeal with respect to the

Conversion Order (15-914-LPS, D.I. 1), Sale Order (15-916-LPS, D.I. 1), and Fee Order (15-

917-LPS, D.I. 1).  On the same day, Appellants filed a motion in the Chapter 7 case to stay those

orders pending their respective appeals.  (*See* B.D.I. 105)  On October 20, 2015, following oral

argument, the Bankruptcy Court denied Appellants' motion to stay.  (*See* B.D.I. 127)  On

October 26, 2015, Appellants filed their Motion to Stay Pending Appeal ("Motion to Stay") with

the Court in each of their pending appeals.  (*See* 15-914-LPS, D.I. 5; 15-916-LPS, D.I. 5; 15-

917-LPS, D.I. 5)  Upon consideration of Appellants' Motion to Stay, the Court entered the

---

[4]*See* AB581 at ¶ 16 ("No Stay of Order.  Notwithstanding Bankruptcy Rule 6004 and any applicable Local Rules, this Order shall not be stayed for fourteen (14) days after the entry hereof and shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  The Trustee is not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order and the Trustee may, without further delay, take all actions and perform all acts authorized under this Order.").

November 17 Order, a lengthy memorandum order denying the Motion to Stay as to the

Conversion Order and Sale Order (15-914-LPS, D.I. 15; 15-916-LPS, D.I. 14) and determining

not to exercise discretion to grant leave for interlocutory appeal of the Fee Order (15-917-LPS,

D.I. 14 at 15-18).[5]

The same day, Appellants filed a letter response requesting that the November 17 Order

"be entered as a full and final decision regarding all matters before this Court . . . in order to

dispense with what appears to be unnecessary briefing . . ." (15-914-LPS, D.I. 16)  On

November 19, 2015, the Court entered an order directing the parties to file a joint status report

articulating the precise relief Appellants sought and the Trustee's position on same.  (15-914-

LPS, D.I. 17)  On November 20, 2015, the parties filed separate responses.  (15-914-LPS, D.I.

18, 19)  On November 24, 2015 the Court entered an order denying the relief sought in the letter

response as procedurally improper, and directing the parties to file a joint status report advising

the Court of their positions as to whether the briefing schedule on the merits of the appeals

should be modified.  (15-914-LPS, D.I. 20).

On November 25, 2015, the parties filed separate letter responses.  (15-914-LPS, D.I. 21,

22)  Appellants' letter response requested that the Court "provide the parties with some insight as

to the issues that continue to concern the Court, and that merit additional briefing" and stay the

November 17 Order pending additional briefing.  Alternatively, Appellants requested that the

---

[5] In their opening brief, Appellants cite to *In re Zibman*, 268 F.3d 298, 301 (5th Cir. 2001), in
support of the following contention: "By entering the Trustee's motion to sell [Appellants']
home, granting the Trustee compensation for the same and denying [Appellants'] motion to
convert, [the Bankruptcy Court] entered a series of final appealable orders."  (*See* D.I. 26 at 4)
Appellants therefore appear to argue that the Fee Order is a final, appealable order.  For the
reasons set forth in the November 17 Order, the Court will not consider that argument.  (*See* 15-
917-LPS, D.I. 14 at 15-18)  The Court finds no support in *Zibman* for the argument that the Fee
Order is somehow made final and appealable by virtue of being part of "a series of final
appealable orders" or is otherwise a final, appealable order.  (D.I. 26 at 4)

Court "certify the stay motion for appeal pursuant to 28 U.S. Code § 1292." (15-914-LPS, D.I. 21) The Trustee filed a letter response objecting to Appellants' request for a further stay, arguing that both the Bankruptcy Court and this Court had issued orders denying Appellants' Motion to Stay, and that to stay the effectiveness of those orders would render the decisions meaningless. (*See* 15-914-LPS, D.I. 22)

On December 1, 2015, the Court held a telephone conference to clarify the parties' positions and determine whether any further relief was appropriate. (*See* 15-914-LPS, D.I. 23) At the telephone conference, the Court determined that no request for relief was pending before the Court and that briefing on the merits of the appeals should proceed. The Court directed the parties to confer and submit a proposed briefing schedule on the merits of the appeals. On December 2, 2015, the Court entered an order approving the parties' agreed upon briefing schedule. (15-914-LPS, D.I. 24, 25).

On December 10, 2015, Appellants filed their opening brief on the merits of their appeals (15-914-LPS, D.I. 26); on December 28, 2015, the Trustee filed his answering brief (15-914-LPS, D.I. 27); and on January 4, 2016, Appellants filed their reply brief (15-914-LPS, D.I. 29).

II.     Parties' Contentions

        A. Conversion Order

        Appellants' statement of issues on appeal does not identify any specific issues to be addressed on appeal and simply cites "The bench ruling denying Debtors' Motion to Convert from Chapter 7 to Chapter 13, entered on October 8, 2015." (*See* 15-914-LPS, D.I. 10 at 7) Based on their briefing, Appellants' central argument on appeal of the Conversion Order is that the Bankruptcy Court erred in denying the Conversion Motion because Appellants had an absolute right to convert their Chapter 7 case to a case under Chapter 13. (*See* D.I. 26 at 15)

"[Appellants] believe that there is no prohibition on conversion at any time, except where conversion would be for naught – *i.e.*, the conversion would lead immediately to the reconversion of the case back to Chapter 7 without more" – and because "that risk is not attendant here," Appellants were entitled to convert. (*See id.* at 9)  Appellants add, "The law permits one conversion from one chapter to another as a matter of right." (*See id.* at 15)  In support of this argument, Appellants cite two United States Supreme Court cases: *Marrama v. Citizens Bank of Mass.*, 127 S. Ct. 1105 (2007) and *Law v. Siegel*, 134 S. Ct. 1188 (2014). Appellants contend that denial of their Conversion Motion was improper because they "supplied sworn statements proving sufficient income to fund the plan, and further that the income was regular." (*See* D.I. 26 at 13 (citing Amended Schedules I and J at B.D.I. 92))  Appellants also appear to argue, based on this evidence, "that they are entitled to convert because their conversion is not an impossibility, which they believe is the standard articulated by the United States Supreme Court in *Law*." (*Id.* at 14)  Finally, Appellants argue that the Bankruptcy Court's finding of bad faith was incorrect as it "was not based on any particular fact in evidence, other than the timing and conjecture on the financial feasibility of a Chapter 13 plan." (*See id.* at 13-14)

Conversely, the Trustee argues that Appellants do not possess an absolute right to convert their case and have mischaracterized the holding of *Marrama*. (D.I. 27 at 23-24)  With respect to the case law cited by Appellants, the Trustee argues that the United States Supreme Court rejected the proposition that there is an absolute right to convert in *Marrama,* and further argues that *Law* has no precedential value because that case did not address the right of conversion. (*Id.* at 23)  The Trustee argues there can be no absolute right to convert because a debtor's right to seek conversion under Section 706(a) is limited by the express language of Section 706(d),

which provides that a case may not be converted to another chapter unless the debtor may be a debtor under such chapter, and that the debtor bears the burden of proving entitlement to conversion. (*See id.* at 23-24)  The Trustee argues that Appellants failed to carry their evidentiary burden of proving that they qualified as a debtor under Chapter 13, and that there is no admissible evidence to support Appellants' contention that they can put forth a confirmable Chapter 13 plan. (*See id.* at 26-27)  The Trustee further argues that the Bankruptcy Court held that the Conversion Motion was not filed in good faith and for a proper purpose, which also disqualified Appellants from converting their Chapter 7 case to Chapter 13 case pursuant to Section 706(d). (*See id.* at 24-25)  Finally, the Trustee argues that conversion of the case after fourteen months would have adversely affected creditors and delayed administration of the case. (*See id.* at 28-29)

B. Sale Order

Appellants' statement of issues on appeal does not identify any specific issues to be addressed on appeal of the Sale Order and simply cites the "Order (I) Approving the Sale of Debtors' Real Property and (II) Granting Related Relief, such Order entered on October 8, 2015." (*See* 15-916-LPS, D.I. 9 at 7)  Appellants argue generally that the Bankruptcy Court erred in entering the Sale Order because sale of the Property was unnecessary. (*See* D.I. 26, 29)  In support of their arguments, Appellants state that "[a]t the time that the Trustee advanced his motion to sell the property, there was enough cash in the Trustee's possession to satisfy 100% of the creditors' claims and also pay all of the administrative costs associated with this case." (*See* D.I. 26 at 10)  Appellants argue that "the estate could have been fully administered, with all claims paid in full, simply by applying the funds on hand to the outstanding claims." (*See id.* at 11)  Appellants further argue that "they cannot see any rational basis for the Trustee's preferred

course of action and submit that any action taken by a fiduciary must have at least that support."
(*See id.*)  Thus, Appellants appear to argue that Bankruptcy Court erred in approving the Sale

because the Trustee did not meet the requirements to justify the sale of the property under Third

Circuit precedent.  (*See id.* at 12 (citing *In re Abbotts Dairies of Pa, Inc.*, 788 F.2d 143 (3d Cir.

1986))

        The Trustee contends that sale of the Property to a good faith purchaser under Section

363(m) of the Bankruptcy Code renders the appeal of the Sale Order moot, and that the Court

should adhere to binding Third Circuit precedent in dismissing appeal of the Sale Order.  (*See*

D.I. 27 at 13-14)  The Trustee further contends that consummation of the sale of the Property

renders Appellants' appeal of the Sale Order equitably moot because the sale "may not be

unwound without causing significant injury to Accord, stopping the Trustee from making

necessary distributions, and turning the Bankruptcy Case on its head."  (*See id.* at 14)  As to

Appellants' argument that the sale was not necessary, the Trustee argues that Section 704 of the

Bankruptcy Code requires the Trustee to liquidate the assets of the bankruptcy estate and that the

Appellants possessed more liabilities than assets.  (*Id.* at 18)  The Trustee argues that even if the

Court accepts the calculations of assets and liabilities as set forth in Appellants' opening brief,

the assets of the bankruptcy estate amounted to $358,240.83, which is $66,759.17 less than the

amount of their liabilities – thus a sale of the Property was necessary to satisfy the claims of

Appellants' creditors.  (*See id.* at 18)  As to Appellants' argument that the Trustee did not meet

the requirements for sale of the Property, the Trustee responds that bankruptcy courts have

considerable discretion in deciding whether to approve a sale and that the sale was justified by a

sound business purpose.  (*See id.* at 15)  The Trustee argues that the record contains unrefuted

evidence that the Trustee obtained significant value for the Property, especially in light of the

conditions weighing on the marketability and appeal of the Property, and that the sale conferred a

clear benefit on the estate and its creditors.  (*See id.* at 16-22)

III.    Standard of Review

        Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158.

Pursuant to § 158(a), district courts have mandatory jurisdiction to hear appeals "from final

judgments, orders, and decrees" and discretionary jurisdiction to hear appeals "from other

interlocutory orders and decrees."  28 U.S.C. § 158(a)(1), (3).  On appeal, this Court reviews the

Bankruptcy Court's findings of fact for clear error and exercises plenary review over questions

of law.  *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.,* 197 F.3d 76, 80 (3d Cir.

1999); *see also In re Hechinger Inv. Co. of Del. Inc.,* 489 F.3d 568, 573 (3d Cir. 2007) ("Our

review of the District Court's decision effectively amounts to review of the bankruptcy court's

opinion in the first instance, because our standard of review is the same as that exercised by the

District Court over the decision of the Bankruptcy Court" and, accordingly, "review[ing] the

Bankruptcy Court's findings of fact for clear error and exercis[ing] plenary review over

questions of law") (internal quotation marks and citations omitted).  The Court must "break

down mixed questions of law and fact, applying the appropriate standard to each component."

*Meridian Bank v. Alten,* 958 F.2d 1226, 1229 (3d Cir. 1992).

        A factual finding "is 'clearly erroneous' when although there is evidence to support it, the

reviewing court on the entire evidence is left with the definite and firm conviction that a mistake

has been committed." *United States v. Gypsum Co.,* 333 U.S. 364, 395 (1948).  "A bankruptcy

court's 'ultimate determination of fact' will not be set aside unless 'that determination is

completely devoid of minimum evidentiary support displaying some hue of credibility or bears

no rational relationship to the supportive evidentiary data." *In re Dr. R.C. Samanta Roy Institute*

*of Sci. Tech. Inc.*, 465 Fed. Appx. 93, 96 (3d Cir. 2011) (quoting *Fellheimer, Eichen &*

*Braverman, P.C. v. Charter Techs.. Inc.*, 57 F.3d 1215, 1223 (3d Cir. 1995)).

IV.     Discussion

    A.  Conversion Order

       Whether a Bankruptcy Court properly denied a debtor's request for conversion is a

question of law requiring *de novo* review on appeal.  *See In re Kuntz*, 233 B.R. 580, 581 (B.A.P.

1ˢᵗ Cir. 1999).  Although Appellants failed to identify any specific issues in their statement of

issues on appeal, based on Appellants' briefs it appears that there are two issues before the

Court: (1) whether the Bankruptcy Court erred in denying the Conversion Motion because a

Chapter 7 debtor has an absolute right to convert its Chapter 7 case to a case under Chapter 13;

and (2) if the right to convert is not absolute, whether the Bankruptcy Court erred in denying the

Conversion Motion under the particular facts of this case.  For the reasons set forth below, the

Court concludes that the right of conversion is not absolute.  A bankruptcy court may deny a

Chapter 7 debtor's motion to convert to Chapter 13 if the Chapter 7 debtor does not qualify as a

"debtor" under Chapter 13 pursuant to either (i) Section 706(d), upon a finding that the debtor

has not carried its evidentiary burden of meeting Section 109(e)'s "regular income" requirement,

or (ii) Section 1307(c), upon a finding of a lack of good faith.  Here, the Bankruptcy Court has

cited both as bases for its denial of the Conversion Motion, and upon review of the record, the

Court finds no clear error with respect to the Bankruptcy Court's findings of fact or error in its

legal determination to deny the Conversion Motion.

      1.  There Is No Absolute Right of Conversion

       Appellants argue that the Bankruptcy Court erred by exercising its discretion to deny the

Conversion Motion because "[t]he law permits one conversion from one chapter to another as a

matter of right." (D.I. 26 at 15 (arguing that Bankruptcy Court lacks discretion to deny conversion)) Appellants also argue "there is no prohibition on conversion at any time, except when the conversion would be for naught – *i.e.*, the conversion would lead immediately to the reconversion of the case back to Chapter 7 without more." (*See id*. at 9) Appellants' arguments fail under the plain language of the statute and controlling case law.

Section 706(a) of the Bankruptcy Code provides that a "debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title." 11 U.S.C. § 706(a). At first glance, this section may appear to give a debtor an absolute right to convert his or her Chapter 7 case to one under Chapter 13. However, controlling case law instructs that Section 706(a) cannot be read on its own and must be read in conjunction with Section 706(d). *See Marrama*, 127 S. Ct. at 1110 (Sections 706(a) and 706(d), read together, operate to condition debtor's right to convert under certain circumstances). Section 706(d) of the Bankruptcy Code states: "Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title *unless the debtor may be a debtor under such chapter*." 11 U.S.C. § 706(d) (emphasis added). Hence, Section 706(d) expressly conditions Appellants' right to convert on their ability to qualify as "a debtor" under Chapter 13. *See Marrama,* 127 S. Ct. at 1110 ("The words 'unless the debtor may be a debtor under such chapter' expressly conditioned [the debtor's] right to convert on his ability to qualify as a 'debtor' under Chapter 13."). Under Section 109(e) of the Bankruptcy Code, to be a Chapter 13 debtor one must be an "individual with regular income" and meet certain limits on the amount of indebtedness, and also there must not be sufficient cause for a court to convert the debtors' Chapter 13 case to Chapter 7 or dismiss it. *See id.* at 1110-11; *see also* 11 U.S.C. §§ 109(e), 1307(c). Section 1307(c) provides that a

Chapter 13 proceeding may be either dismissed or converted to a Chapter 7 proceeding "for cause" and the section includes a nonexclusive list of 10 such causes justifying that relief. *See Marrama*, 127 S. Ct. at 1110-11. While bad faith is not expressly listed as a cause, the Supreme Court has held that it is, reasoning that denial of conversion to Chapter 13 upon a finding of bad faith may be appropriate because "[i]n practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct . . . is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13." *Id.*; *see also In re Piccoli*, 2007 WL 2822001, *6 (E.D. Pa. 2007) ("The same good faith analysis performed when evaluating a Chapter 13 petition should be performed when evaluat[ing] a motion to convert . . . from Chapter 7 to Chapter 13.").

Appellants disagree that the Bankruptcy Court had the power to deny conversion and cite *Law* as "Supreme Court precedent mandating conversion unless it is assured that the same would certainly lead to the reconversion of the case to a Chapter 7." (D.I. 26 at 15) In *Law*, however, the Supreme Court considered a different issue: the authority of the bankruptcy court to surcharge administrative expenses against assets of the bankruptcy estate which the Chapter 7 debtor claimed as exempt. *See* 134 S. Ct. at 1192. The Supreme Court held that the Bankruptcy Court had exceeded its authority when it ordered that the $75,000 protected by the Chapter 7 debtor's homestead exemption be made available to pay fees incurred by the Chapter 7 trustee in overcoming the debtor's fraudulent misrepresentations. *See id.* at 1191.[6] In so concluding, the Supreme Court held that a bankruptcy court may exercise its statutory authority to carry out the

---

[6] A debtor is entitled to claim a homestead exemption pursuant to Section 522 of the Bankruptcy Code, and that section "does not give courts discretion to grant or withhold exemptions based on whatever considerations they deem appropriate." *Law*, 134 S. Ct at 1196 (noting statute exhaustively specifies criteria for exemption).

provisions of the Bankruptcy Code under Section 105(a), and may also possess the inherent power to sanction abusive litigation practices, "[b]ut in exercising those statutory and inherent powers, a bankruptcy court may not contravene specific statutory provisions." *Id.* at 1194 (internal citations/quotation marks omitted).

Appellants quote *Law's* holding that a Bankruptcy Court may not contravene specific statutory provisions, and thus appear to argue that, by denying conversion under Section 706(a), the Bankruptcy Court "contravene[d] [a] specific statutory provisio[n]." (D.I. 26 at 15)  The Court agrees with the Trustee further argues that while *Law* discusses *Marrama*, "the passage discussing conversion constitutes dicta which, in turn, referenced dicta from the United States Supreme Court opinion in *Marrama*," a case which, as set forth above, does not stand for the proposition that a debtor has an absolute right to convert. (*See id*. at 23)

Finally, Appellants argue "they are entitled to convert because their conversion is not an impossibility, which they believe is the standard articulated by the United States Supreme Court in *Law*." (*See* D.I. 26 at 14)  However, the Court finds no support in *Law* for the argument that a debtor is entitled to convert wherever "conversion is not an impossibility." Such a holding would be inconsistent with the statute and *Marrama*.

In sum, the Court finds no error in the Bankruptcy Court's conclusion that it could deny the Conversion Motion where the debtor failed to meet the requirements of Section 706(d).

   2.  <u>Denial of Conversion for Failure to Meet the Requirements of Section 706(d)</u>

Having found that the right to conversion is not absolute, the Court further finds no clear error with Bankruptcy Court's decision to deny the Conversion Motion under the facts of this case. The Bankruptcy Court's bench ruling denying the Conversion Motion was based on:

(1) Appellants' failure to carry the evidentiary burden to show eligibility to be a "debtor" under

Chapter 13; and (2) the Court's conclusion that the Conversion Motion had not been "presented

in good faith and for a proper purpose." (AB60-61, 10/8/15 Hr'g. Tr.)

> i.   Eligibility to be a "Debtor" under Chapter 13

As discussed above, in order to grant the Conversion Motion, the Bankruptcy Court

would have had to determine that Appellants could be a "debtor" under Chapter 13. *See* 11

U.S.C. § 706(d). Section 109(e) dictates that "only an individual with regular income" may be a

Chapter 13 debtor. *See* 11 U.S.C. § 109(e). Section 101(30) of the Bankruptcy Code defines an

"individual with regular income" as an "individual whose income is sufficiently stable and

regular to enable such individual to make payments under a plan under chapter 13." 11 U.S.C.

§ 101(30). "The benchmark for determining whether an individual has regular income for

purposes of section 101(30) . . . is not the type or source of income, but its stability and

regularity." *In re Bartelini,* 434 B.R. 285, 292 n.11 (Bankr. N.D.N.Y. 2010) (internal quotation

marks omitted); *see also In re Schauer*, 2000 WL 33792712, *7 (Bankr. D.N.D. 2000). The

income need only be regular and stable enough to ensure that a debtor is able to make payments

under a Chapter 13 plan. *See In re Wilhelm*, 6 B.R. 905, 908 (Bankr. E.D.N.Y. 1980).

Case law interpreting this provision has held that the burden of establishing the regularity

and stability of income is on the debtor. *See In re Antoine*, 208 B.R. 17, 19 (Bankr. E.D.N.Y.

1997); *In re Sassower*, 76 B.R. 957, 960-61 (Bankr. S.D.N.Y. 1987) ("It is incumbent upon a

Chapter 13 debtor to sufficiently demonstrate an ability to fund the plan from sources which are

stable and regular.") (internal citations/quotation marks omitted). "There must be some factual

basis for the court to determine the regularity and stability of the debtor's income." *In re

Tornheim*, 239 B.R. 677, 685 (Bankr. E.D.N.Y. 1999) (internal citations/quotation marks

omitted). "[W]here a debtor fails to produce evidence of the existence of a regular income, [the debtor] does not qualify for Chapter 13 relief under 11 U.S.C § 109(e)." *Wilhelm,* 6 B.R. at 908.

In denying the Conversion Motion, the Bankruptcy Court expressed "significant doubts regarding the viability of a Chapter 13 case, were it filed." (AB60-61 (10/8/15 Hr'g. Tr.))  The record shows that Appellants failed to meet their burden to establish regular income.  Appellants' motion to convert was five sentences long, cited no law, and attached no documents.  Appellants did not offer testimony at the hearing on the Conversion Motion.  Thus, there was no evidence from which the Bankruptcy Court could conclude that Appellants could make payments under a Chapter 13 plan.

Appellants dispute this conclusion, arguing that they provided sworn statements in the form of Amended Schedules I & J.  (*See* B.D.I. 92, Amended Schedule I (listing employment of Mark Culp although not indicating any length of employment) and Amended Schedule J (listing monthly net income of $1,292.85))  But Appellants filed Amended Schedules I & J on September 22, 2015 – several weeks after their Conversion Motion was filed on August 27, 2015, and, notably, one day prior to the September 23, 2015 hearing on their Conversion Motion (*See* AB304 (notice of Conversion Motion indicating hearing date of September 23, 2015)  As the Trustee observes, Appellants failed to submit tax returns, pay stubs, a declaration, or testimony to show they fulfilled the regular income requirement.  While Appellants state in their briefs that they receive disability benefits, this was contradicted by Appellants' Statement of Financial Affairs, and Appellants presented no evidence that disability payments continue to this date or are sufficient to support a Chapter 13 plan.  Based on the record, there is an absence of a "factual basis for the Court to determine the regularity and stability of the debtor[s'] income," *In*

*re Mozer*, 1 B.R. 350, 352 (Bankr. D. Colo. 1979), and hence there is no clear error in the Bankruptcy Court's decision to deny the Conversion Motion.

In further support of their contention that conversion was appropriate, Appellants reference a statement made by the Bankruptcy Court at the October 8 hearing: "It may be that I would entertain a conversion motion at a later date . . ." (D.I. 26 at 8 (citing 10/8/15 Hr'g. Tr. at AB50)) However, that the Bankruptcy Court indicated its willingness to consider a future request for conversion (possibly one supported with evidence of regular income and plan feasibility) does not undermine the correctness of its decision to deny the unsupported motion it eventually confronted.

ii.    Good Faith and Proper Purpose

Even assuming the evidence provided by Appellants satisfied their evidentiary burden under Section 109(e), the Bankruptcy Court did not clearly err in denying the Conversion Motion based on its finding "that the request for conversion [was not] presented in good faith and for a proper purpose." (*See* AB 60-61 (10/8/15 Hr'g. Tr.)) The Third Circuit recognizes that "the good faith inquiry is a fact intensive determination better left to the discretion of the bankruptcy court.'" *In re Lilley*, 91 F.3d 491, 496 (3d Cir.1996) (quoting *In re Love*, 957 F.2d 1350, 1355 (7th Cir.1992)). As a result, a bankruptcy court's bad faith finding will not be set aside unless clearly erroneous. *See id.* Upon a review of the record, the Court finds no clear error with respect to the Bankruptcy Court's finding of Appellants' lack of good faith and proper purpose in filing the Conversion Motion.

In *Marrama*, the Supreme Court declined to articulate exactly what conduct qualifies as bad faith sufficient to permit a bankruptcy judge to dismiss a Chapter 13 case or deny conversion from Chapter 7, stating only that behavior rising to the level of bad faith must be "extraordinary"

21

and "atypical." *See* 127 S. Ct. at 1112 n.11. The Third Circuit has recognized that "good faith is a term incapable of precise definition" and is "a fact intensive determination." *See Lilley*, 91 F.3d at 496 (internal citations omitted). When conducting a good faith analysis involving a motion to convert, courts in this circuit have considered the totality of the circumstances, including a review of facts such as (1) the timing of the motion, (2) the debtor's motive in filing the motion, and (3) whether the debtor has been forthcoming with the bankruptcy court and creditors. *See In re Murray*, 377 B.R. 464, 469 (Bankr. D. Del. 2007) (internal quotation marks omitted)).

Here, with respect to timing, the Bankruptcy Court described the Conversion Motion as an "eleventh hour request," a finding that is not clearly erroneous. (*See* AB50 (10/8/15 Hr'g. Tr.)) The record reflects that the Conversion Motion was filed on August 27, 2015 – fourteen months after the Chapter 7 Petition. (*See* AB302) Notably, the Conversion Motion was filed shortly after the entry of the Bid Procedures Order on July 28, 2015 (*see* AB141); after the Trustee had conducted marketing efforts at the direction of the Bankruptcy Court (*see* Stanziale Decl. at AB197); and shortly before the September 23, 2015 hearing to approve the sale on a final basis. Moreover, Appellants filed their amended schedules reflecting newly obtained employment just one day prior the hearing on the Conversion Motion and Sale Motion. (*See* B.D.I. 92 (indicating amended schedules were filed on September 22, 2015)) It was not clearly erroneous to view the timing of Appellants' Conversion Motion as aimed at thwarting the Trustee's efforts to sell the Property, an action which Appellants had consistently opposed. (*See e.g.,* B.D.I. 83, 85, 86 (Appellants' opposition to sale of Property and compensation of any legal fees relating to sale efforts))

With respect to motive, the Bankruptcy Court found that the Conversion Motion was "filed and prosecuted at this point to frustrate a process that has now gone on for many months . . . [and] is not well founded." (AB50 (10/8/15 Hr'g. Tr.))  This finding is not clearly erroneous. On September 14, 2015, one week before the September 23, 2015 hearing to approve the sale on a final basis, Appellants filed an opposition asking the Bankruptcy Court to "deny sale approval . . . as Debtors have filed to convert to Chapter 13, *removing the power of the Chapter 7 Trustee to sell Debtors' property*."  (*See* B.D.I. 83 at 3 (emphasis added))  The pleadings indicate that Appellants' request to convert was aimed at taking control of the assets away from the Trustee and circumventing the Bid Procedures Order, which had been entered by the Bankruptcy Court on July 28, 2015 (over Appellants' objection), and which approved the sale on a preliminary basis subject to higher and better offers.  (*See* AB141)  Appellants conceded in their pleadings that their disagreement with legal fees was another motivation for filing the Conversion Motion. (*See* D.I. 26 at 7 ("The Debtors, . . . *fearing that the Trustee was administratively wasting assets of the estate*, moved to convert to a Chapter 13 proceeding.") (emphasis added))  A dispute over professional fees is also not a proper purpose for conversion.

Finally, with respect to whether Appellants have been forthcoming with the Bankruptcy Court and creditors, the Court finds no basis to find that they have not been forthcoming in their Chapter 7 case.  Although the record reflects several disputes regarding Appellants' positions and disclosures, the Trustee does not argue on appeal that Appellants have not been forthcoming, and the Bankruptcy Court made no such finding.

On balance, the Court finds no clear error with respect to the Bankruptcy Court's finding that the Conversion Motion was not presented in good faith.

Appellants argue that a finding of bad faith to deny conversion under Section 1307(c) and *Marrama* is limited to situations in which such conversion was "in furtherance of a dishonest purpose, such as pre-petition theft and/or subsequent attempts to conceal any such dishonest act." (D.I. 29 at 4)  The Court does not read *Marrama* to limit a court's finding of bad faith under Section 1307 to such circumstances.  Rather, *Marrama* held that conduct rising to the level of bad faith must be "extraordinary" and "atypical."  127 S. Ct. at 1112 n.11.  As set forth above, the Court finds no clear error with the Bankruptcy Court's determination that Appellants' request to convert meets the bad faith standard set forth in *Marrama*.

Moreover, the Bankruptcy Court had power to deny conversion under Section 105(a) of the Bankruptcy Code to prevent an abuse of process.  Section 105(a) empowers the bankruptcy court to "tak[e] any action or mak[e] any determination necessary or appropriate to . . . prevent abuse of [the bankruptcy] process."  11 U.S.C. § 105(a).  "A motion to convert can be abusive when it is filed to frustrate the bankruptcy process, rather than to implement the Congressional policy of repayment of creditors."  *Murray*, 377 B.R. at 471 (internal quotation marks omitted); *see also Marrama*, 127 S. Ct. at 1111-12 ("Nothing in the text of either § 706 or § 1307(c) (or the legislative history of either provision) limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor.").

In conclusion, the right to convert is not absolute, and the Bankruptcy Court had authority to deny the Conversion Motion where Appellants failed to meet the requirements of Section 706(d).  The Court finds no clear error with the Bankruptcy Court's conclusion that Appellants failed to carry their evidentiary burden to show they could be a "debtor" under Chapter 13

pursuant to Section 109(e).   Appellants failed to satisfy Section 706(d)'s express conditions for conversion.   Therefore, the Conversion Order is affirmed.

      B.   Sale Order

As noted above, Appellants' statement of issues on appeal with respect to the Sale Order does not identify any specific issues to be addressed on appeal and simply cites the Order itself. (*See* 15-916-LPS, D.I. 9 at 7)   Appellants argue generally that the Bankruptcy Court erred in entering the Sale Order because sale of the Property was not necessary to satisfy creditors.   (*See* D.I. 26 at 11 ("[T]he estate could have been fully administered, with all claims paid in full, simply by applying the funds on hand to the outstanding claims."))   Appellants further argue that they do not see "any rational basis for the Trustee's preferred course of action and submit that any action taken by a fiduciary must have at least that support."   (*Id.*)   The Trustee responds that the record contains undisputed evidence that the Trustee obtained significant value for the Property and that the sale conferred clear benefit upon the estate. (*See* D.I. 27 at 18)   The Trustee further argues that the Court should dismiss the appeal of the Sale Order because sale of the Property has been consummated, and thus the appeal is moot under Section 363(m) and/or the doctrine of equitable mootness.   (*See id.* at 13-14)

      1.   Appeal of the Sale Order is Moot Under Section 363(m)

The Trustee argues that appeal of the Sale Order is moot pursuant to Section 363(m) of the Bankruptcy Code because the Appellants did not obtain a stay pending appeal and because the Property has now been purchased by a good faith purchaser.   Section 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). This section "was created to promote the policy of the finality of bankruptcy court orders, and to prevent harmful effects on the bidding process resulting from the bidders' knowledge that the highest bid may not end up being the final sale price." *See Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 500 (3d Cir. 1998). In the Third Circuit, an appeal is moot pursuant to Section 363(m) if (1) appellant does not obtain a stay of the sale order, and (2) the appellate court finds that reversal or modification of such order would affect the validity of the sale. *See In re Alabama Aircraft Indus., Inc.*, 464 B.R. 120, 123 (D. Del. 2012) (citing *Krebs Chrysler-Plymouth, Inc.*, 141 F.3d at 499)).

Reviewing the Bankruptcy Court's good faith finding for clear error, the Court finds no clear error. *See Hower v. Molding Sys. Eng'g Corp.*, 445 F.3d 935, 939 (7th Cir. 2006) (noting a bankruptcy court's finding that purchaser of debtor's assets acquired those assets in "good faith" within meaning of Section 363(m) statutory mootness provision is factual finding reviewable for clear error).

The Sale Order provides that "Accord [was] a good faith buyer under Section 363(m) of the Bankruptcy Code . . . entitled to all of the protections afforded thereby." (AB575, ¶ P) The Sale Order further states: "The Sale has been undertaken by Accord in good faith. Accord satisfies the good faith requirement of Section 363(m) of the Bankruptcy Code, and, accordingly, Accord is entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code." (AB579, ¶ 9; *see also* AB62 (10/8/15 Hr'g. Tr.) (Bankruptcy Court stating "the proposed sale . . . has been presented in good faith")

Appellants do not dispute that the Property was purchased in good faith.[7] "In absence of admissible evidence of bad faith, [the Court] cannot say that it was clear error for the bankruptcy judge to conclude that the sale occurred in good faith." *Hower*, 445 F.3d at 939. Appellants also do not dispute that sale of the Property meets the factors set forth in *Krebs, see* 141 F.3d at 499, as Appellants did not obtain a stay of the sale order, despite two attempts (*see* D.I. 15; B.D.I. 127), and Appellants seek to set aside the entire Property sale which would undermine the validity of the transaction, *see In re Polaroid Corp.*, 2004 WL 2223301, at \*2 (D. Del. 2004) (discussing *Krebs* factors).

In disputing mootness, Appellants' only argument is that "this Court stated in a teleconference . . . that failure to issue [a] stay pending appeal is not necessarily dispositive as to a decision on the merits." (D.I. 29 at 6) Plainly, however, this statement was not a determination of the mootness issue.

Accordingly, the Court concludes that Appellants' appeal of the Sale Order is moot pursuant to Section 363(m).[8]

## 2. The Trustee Established a Sound Business Purpose Justifying Sale of the Property

Even if the appeal of the Sale Order was not moot, Appellants' argument that the Trustee did not meet his burden of establishing a sound business purpose to justify the sale of the Property fails given the uncontroverted evidence in the record. Under Section 704(a), the Trustee has a statutory obligation to "collect and reduce to money the property of the estate for

---

[7] D.I. 27-1, Ex. A (deed, delivered and effective as of December 16, 2015, evidencing sale of Property)

[8] Because the Court concludes that appeal of the Sale Order to a good faith purchaser is moot pursuant to Section 363(m), the Court does not reach Trustee's additional argument that appeal of the Sale Order is moot under the doctrine of equitable mootness. (*See* D.I. 27 at 14)

which such trustee serves." 11 U.S.C. § 704(a).  Transactions under Section 363 must be based

upon the sound business judgment of the trustee.  *See In re Filene's Basement, LLC*, 2014 WL

1713416, * 12 (Bankr. D. Del. 2014).  Where the trustee articulates a reasonable basis for the

business decision, courts will generally not entertain objections.  *See id.*  If a valid business

justification exists, then a strong presumption follows that the agreement was negotiated in good

faith and is in the best interests of the estate.  *See id.*  Moreover, the Bankruptcy Court has

"considerable discretion" in deciding whether to approve a sale of assets pursuant to Section

363(b).  *See In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 152-53 (D. Del. 1999).  In

evaluating whether a sound business purpose justifies sale of property under Section 363, courts

consider a variety of factors -- including the proportionate value of the asset to the bankruptcy

estate as a whole; the amount of elapsed time since the filing; the effect of a proposed

distribution; the difference between the proceeds to be realized versus the appraised value of the

property; and whether the asset is increasing or decreasing in value -- which essentially represent

a "business judgment" test.  *See Montgomery Ward,* 242 B.R. at 153-54.

  Here, the Bankruptcy Court carefully considered the evidence and did not clearly err in

concluding that the evidence demonstrated a sound business purpose to justify the sale.

Appellants' schedules of assets and liabilities, along with their Section 341 examination

testimony, set forth the state of disrepair of the Property and the liens encumbering it.  (*See*

AB338-39 (Appellants' Schedule D, listing Green Tree's secured claim in amount of

$281,328.00); AB393-422 (Appellants' testimony regarding fire damage to Property); AB431-36

(evidencing Accord's proof of claim, in amount of $131,210.33, and attaching order of judgment

against Appellants for breach of contract and mechanic's lien))  The Trustee also submitted a

reply and declaration which, among other things, described the Trustee's marketing efforts,

incorporated the Buckley Appraisal by reference, and set forth the benefit to be conferred upon the estate as a result of the proposed sale. (*See* AB172-287)

Additionally, the Court finds in the record no evidence that that the sale was not justified. Appellants declined to cross-examine the Trustee and introduced no evidence to controvert the facts set forth in the Trustee's declaration or the Buckley Appraisal. (*See* AB39-66 (10/8/15 Hr'g. Tr.)) Appellants assert that "[a]t the time that the Trustee advanced his motion to sell [Appellants'] home, there was enough cash in the Trustee's possession to satisfy 100% of the creditors' claims and also pay all administrative costs associated with this case." (D.I. 26 at 10) But the record does not support this position. Even under Appellants' calculations as set forth in their briefing, it appears that Appellants' liabilities ($425,715.33, consisting of $13,993 in administrative expenses, a $131,219.33 claim held by Accord, $503.00 in credit card debt, and the mortgage on the Property (of approximately $280,000)) exceeded their assets ($358,240.83, consisting of $242,660.60 in property insurance proceeds, $41,553.06 in cash, and $74,027.17 in additional insurance proceeds held in escrow by Green Tree). (*See also* D.I. 26 at 10-11 (total liabilities exceeding total assets by approximately $67,474.50); AB339 (listing Green Tree's secured claim on mortgage loan in amount of $281,328.00)) Furthermore, the $74,000 in insurance proceeds held in escrow by lender Green Tree was not "cash" on hand available for the Trustee's distribution to creditors, as Green Tree had asserted an interest in the funds as collateral. (*See* B.D.I. 30, ¶ 5 (Green Tree asserting it has lien on insurance proceeds earmarked for restoration of Property, to protect secured interest in Property)) In addition, Appellants' argument ignores the Trustee's statutory duty, upon Appellants' filing of their Chapter 7 case, to liquidate assets and make distributions to creditors. *See* 11 U.S.C. § 704(a).

The record reflects that the Bankruptcy Court considered the appropriate factors in determining to approve the sale, including, *inter alia*, that "[the Trustee] and his professionals have conducted [a] solicitation and marketing effort consistent with the Court's direction and consistent with appropriate commercial practices and standards, and again consistent with the exercise of [the Trustee]'s fiduciary and statutory duties as the Chapter 7 trustee." (AB61-62 (10/8/15 Hr'g. Tr.)) The Bankruptcy Court further considered that the marketing process concluded with a "substantial bid" which, based on the Trustee's testimony, makes possible "the prospect of a complete and full distribution . . . to all holders of secured and general unsecured claims, as well as a meaningful returned distribution to the debtors." (*Id.*) There was no clear error in the Bankruptcy Court's finding that the sale was consistent with the sound exercise of the Trustee's business judgment. (*See id.*)

Finally, Appellants argue that the Trustee was not authorized to sell the Property because it is exempt property under 10 Del. C. § 4914(c)(1). (*See* D.I. 29 at 4-6) The place to list property that a debtor contends is exempt from the bankruptcy estate is Schedule C. Appellants' Amended Schedule C reflects that Appellants have consistently listed the value of their claimed exemption in the Property as $0.00. (*See* AB337, AB380, AB391 (Appellants' Schedule C, and subsequent amendments)) Again, there was no clear error in the Bankruptcy Court's approval of the sale of the Property.

V.    Conclusion

For the reasons set forth above, the Bankruptcy Court's Conversion Order is AFFIRMED and the appeal of the Sale Order is DISMISSED.

HON. LEONARD P. STARK
UNITED STATES DISTRICT COURT